# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# HELENA DIVISION

| | |
|---|---|
| WILLIAM HENRY,<br><br>Plaintiff,<br><br>vs.<br><br>GOV. BRIAN SCHWEITZER, et. al.,<br><br>Defendants. | Cause No.  CV 08-081-H-DWM-RKS<br><br>ORDER TO SERVE COMPLAINT BY REQUESTING WAIVER OF SERVICE OF SUMMONS AND FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE<br><br>(Defendants see D.Mont. L.R. 12.2) |

Plaintiff William Henry is a prisoner proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff's Amended Complaint alleges his constitutional rights were violated when he was not allowed visitation with his wife and children, was not allowed photos of his children, his legal mail was interfered with and destroyed, and he was retaliated against.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.  STATEMENT OF THE CASE

### A.     Parties

Plaintiff is a state prisoner incarcerated at Montana State Prison in Deer

Lodge, Montana.

In his Amended Complaint, Plaintiff named as Defendants: Toni Barkley, Correctional Sgt. Charles Phillips, Correctional Officer Steve Hatcher, Correctional Sgt. Gary McQuin, Mail Room Supervisor Denise Deyott, Visiting Room Supervisor Lee Guthrie, Group Therapist Blair Hopkins, Captain Scott McNiel, ISP Officer–John Doe 1, and Grievance Officer Billie Reich.

Plaintiff did not list Governor Brian Schweitzer, the Montana Department of Corrections, Mike Ferriter, Ted Ward, Montana State Prison, or Mike Mahoney as Defendants in his Amended Complaint. As Plaintiff was advised in the Court's first prescreening Order, an amended complaint supersedes the original complaint. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990); *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967). Accordingly, these Defendants should be dismissed.

### B. Plaintiff's Allegations

Plaintiff contends Defendants Deyott, Barkley, Phillips, Hatcher, McQuin, Hopkins, Guthrie, and McNiel terminated his visitation rights with his wife, children, and grandchildren and confiscated and did not allow Plaintiff to have photos of his children in violation of Plaintiff's First Amendment rights and due

process rights under the Fourteenth Amendment.

Secondly, Plaintiff raises claims of retaliation.  He contends Inner Prison Security (ISP) searched his jail cell in retaliation for Plaintiff exercising his right to file grievances.  He alleges Defendant Reich was deliberately indifferent to Plaintiff's federal rights for failing to conduct "an addictive investigation" into the search.  He also alleges Captain McNiel's conduct in denying Plaintiff visitation rights was in retaliation for conflicts he had with Captain McNeil approximately ten years prior when Plaintiff worked at the prison and as a Sheriff's Deputy. Finally, he contends Defendant Hatcher stopped him from entering certain areas of the jail necessary for his job.

Third, Plaintiff alleges Defendant Deyott confiscated his legal mail from his attorney regarding the visitation issues and destroyed that legal mail without a hearing in violation of his due process rights and denying him access to the courts. He also contends certain legal mail was opened outside of his presence.

Finally, Plaintiff alleges he has a Fourth Amendment right to marriage and the termination of Plaintiff's visits with his wife, children, and grandchildren violated that right.

## II.  PRESCREENING

Having given Plaintiff an opportunity to amend his Complaint, the Court will now complete the prescreening process as required under 28 U.S.C. § 1915 and 28 U.S.C. § 1915A.

### A.  First Amendment

    1.  <u>Visitation</u>

With respect to Plaintiff's First Amendment claims, "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  But "freedom of association is among the rights least compatible with incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131, 123 S.Ct. 2162, 2167, 156 L.Ed.2d 162 (2003).  Accordingly, "[s]ome curtailment of that freedom must be expected in the prison context." *Overton*, 539 U.S. at 131, 123 S.Ct. at 2167.  Thus, rules governing inmate visitation "are peculiarly within the province and professional expertise of corrections officials ...." *Pell*, 417 U.S. at 827.  Nevertheless, inmates appear to retain some right to intimate association, albeit a limited right.  *Overton*, 539 U.S. at 131, 123 S.Ct. at 2167.

Whether Defendants violated that limited right is determined by a *Turner* analysis, whether the visitation ban and the ban on photos bears a rational relation to legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Plaintiff alleges Defendants denied him visitation from his family and denied him photographs of his children for no legitimate penological reason such an allegation states a First Amendment claim.

Plaintiff's chances of success appear very low. The grievance responses attached to the complaint say the prison denied visitation because a provision in Plaintiff's judgment of conviction denyies him all contact with minors. This would likely be a legitimate penological reason for denial of visitation with Plaintiff's children. It is unclear how it would apply to Plaintiff's wife. Regardless, the truth or veracity of that justification appears to be the very thing challenged in Plaintiff's Amended Complaint and as such cannot be a basis for dismissal on prescreening. Plaintiff in this limited regard has stated a First Amendment freedom of association claim against Defendants Deyott, Barkley, Phillips, Hatcher, McQuin, Hopkins, Guthrie, and McNiel.

  2.  Legal Mail

Inmates also have a First Amendment right both to send and receive mail.

*See Thornburgh v. Abbott*, 490 U.S. 401 (1989).  While Plaintiff failed to state a due process claim or an access to the courts claim, the allegation that Defendant Deyott confiscated and destroyed Plaintiff's legal mail is sufficient to state a First Amendment claim and therefore will be served upon Defendants.

The extent of a prisoner's rights with regard to the inspection of legal mail is not clear.  *Wolff v. McDonald*, 418 U.S. 539, 577, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).  A prison policy of opening legal mail for inspection only in the presence of the inmate meets, and may even exceed, the demands of the Constitution. *Id.* As Plaintiff alleges his legal mail was opened not in his presence, this claim will also be served upon Defendants.  Neither of these rulings expresses any opinion about whether Mr. Henry will be able to prove these claims so as to ultimately prevail.

     3.  Retaliation

To state a claim for First Amendment retaliation in the prison context, a plaintiff must allege five elements:  (1) a state actor took an adverse action against the plaintiff, (2) because of, (3) the plaintiff's protected conduct, (4) which chilled the plaintiff's exercise of his First Amendment rights, and (5) did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68

(9th Cir. 2005).  An allegation of "harm that is more than minimal" is sufficient to satisfy the fourth element, even if a plaintiff fails to allege a chilling effect. Rhodes, 408 F.3d at 567-68, n. 11.

Plaintiff first alleges Defendant McNiel denied Plaintiff's visitation rights because he had personal "vindictives" against Plaintiff regarding pre-prison events which occurred nearly ten years prior to the events at issue.  Plaintiff has not alleged Defendant McNiel took these actions because Plaintiff exercised his First Amendment rights and as such these claims fail as a matter of law.

To the extent, Plaintiff raised other retaliation claims regarding visitation, the search of his cell, and his not being able to access certain areas of the prison, those claims also fail as a matter of law.  To prove retaliation, a plaintiff must show defendants took adverse action against him that "would chill or silence a person of ordinary firmness from future First Amendment activities." White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000) (citing Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999)).  Retaliation is not established simply by showing adverse activity by defendant after protected speech; rather, plaintiff must show a nexus between the two.  See Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the

logical fallacy of post hoc, ergo propter hoc, i.e., "after this, therefore because of this").  *Compare Huskey,* 204 F.3d 893 (summary judgment proper against plaintiff who could only speculate that adverse employment decision was due to his negative comments about his supervisor six or seven months earlier) with

*Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1315-16 (9th Cir. 1989)

(evidence of timing and nature of suspensions sufficient to infer retaliatory motive).  "A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive."

*Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct.1955 (2007), the United States Supreme Court tightened the requirements for pleading a civil cause of action.  The Supreme Court explained that while a complaint "does not need detailed factual allegations," a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  *Twombly*, 127 S.Ct. at 1964-65 (Internal citations, quotation marks and brackets omitted).  The

Supreme Court also explained that Rule 8 "requires a 'showing,' rather than a

blanket assertion, of entitlement to relief."  *Twombly*, 127 S.Ct. at 1965 n.3.  The

factual allegations necessary to make that showing "must be enough to raise a

right to relief above the speculative level," *Twombly*, 127 S.Ct. at 1965.

In light of *Twombly,* the Court finds Plaintiff's allegations that his cell was

searched, his visitation rights were restricted, and his access around the prison was

restricted are insufficient to state a claim for retaliation.

### B.  Due Process

Plaintiff also alleges the denial of visitation violated his rights under the

Due Process Clause.  The Due Process Clause protects prisoners from deprivation

of life, liberty, or property without due process of law.  *Kentucky Dep't of Corr. v.*

*Thompson*, 490 U.S. 454, 459-60, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989).  To

state a cause of action for deprivation of procedural due process, a plaintiff must

first establish the existence of a liberty interest for which the protection is sought.

Liberty interests may arise from the Due Process Clause itself or from state law.

*Meachum v. Fano*, 427 U.S. 215, 223-27, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).

The Due Process Clause does not guarantee a right of unfettered visitation.

*See Kentucky Dep't of Corr.*, 490 U.S. at 460-61; *Keenan v. Hall*, 83 F.3d 1083,

1092 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998). "The denial of prison access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence,' and therefore is not independently protected by the Due Process Clause." *Kentucky Dep't of Corr.*, 490 U.S. at 460, *quoting Hewitt v. Helms*, 459 U.S. 460, 468, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). Accordingly, plaintiff had no liberty interest in his family's visitation, and his due process claim fails as a matter of law.

### C. Fourth Amendment Right to Marriage

The Fourth Amendment to the United States Constitution provides,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Const. Amend. IV. Under the facts presented, the Court has found no authority for a right to marriage arising under the Fourth Amendment and Plaintiff cited no such authority.[1] This claim shall be dismissed.

### D. Grievance Procedure

---

[1]Prisoners do possess a constitutionally protected interest in the marital relationship. *Turner*, 482 U.S. at 96. But Plaintiff's concerns regarding his right to associate with his ex-wife (as alleged in his initial Complaint (Document 2, p. 10, ¶ 63)), or his common law wife (as alleged in his Amended Complaint (Document 9, p. 10, ¶89)) are encompassed with his First Amendment claims.

The only allegation against Defendant Reich is that she conducted an "in addictive investigation" (Document 9: Amended Complaint, ¶ 55) and the failure to conduct an "addictive investigation" was deliberately indifferent to Plaintiff's federal rights.

There is no constitutional right to a prison administrative appeal or grievance system.  *See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003)("Inmates lack a separate constitutional entitlement to a specific prison grievance procedure."); *accord Wolff v. McDonnell*, 418 U.S. 539, 565, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (accepting Nebraska system wherein no provision made for administrative review of disciplinary decisions).  "Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007).  Accordingly all claims regarding the alleged failure to investigate Plaintiff's grievances and all claims against Defendant Reich should be dismissed.

## III.  MOTION FOR PRELIMINARY INJUNCTION

Plaintiff has also filed a Motion for Temporary Restraining Order and Preliminary Injunction.  Plaintiff contends he is being retaliated against for filing

grievances and petitioning the government for redress.  (Document 10).

The Prison Litigation Reform Act ("PLRA") states that,

In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief  . . .

18 U.S.C. § 3626(2).

The traditional equitable criteria for granting a preliminary injunction in the Ninth Circuit are:  "(1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury to the plaintiff if the preliminary relief is not granted; (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)."  *Johnson v. California State Bd. of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995); *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003).  Alternatively, the moving party may demonstrate either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions going to the merits were raised and the balance of hardships tips sharply in his or her favor.  *Johnson*,

72 F.3d at 1430 (emphasis added); *see also Earth Island Institute v. U.S. Forest Service*, 351 F.3d 1291, 1298 (9th Cir. 2003).  These alternatives represent "extremes of a single continuum" rather than two separate tests and thus, the "greater the relative hardship to (the party seeking the preliminary injunction), the less probability of success must be shown." *Clear Channel*, 340 F.3d at 813.

Generally, preliminary injunctive relief is designed to preserve the status quo until the court has an opportunity to hear the lawsuit on its merits.  *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 990 (9th Cir. 2006).  If the relief sought is mandatory rather than prohibitory, the balance must more clearly favor the applicant.  *Dahl v. HEM Pharm. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993).

The first prong of the preliminary injunction standard is the probability of success on the merits.  As set forth above, the only claims to be served upon Defendants are Plaintiff's First Amendment claims regarding visitation and his legal mail.  Nowhere in the instant motion does Plaintiff demonstrate that he probably will prevail on the merits.  In fact, the Court has reservations regarding the likelihood of success of any of Plaintiff's claims.

In addition, Plaintiff makes no connection between the allegations in the

complaint and the allegations in his motion.  The remaining claims are First Amendment visitation issues and whether Plaintiff's legal mail is opened outside his presence.  Plaintiff's motion seeks to prohibit prison officials from transferring Plaintiff, reclassifying him, and/or retaliating against him in anyway.  He describes cell searches and threats of transfers, nothing related to his visitation or legal mail.

The second prong of the preliminary injunction focuses on the relative hardships and whether injunctive relief is necessary to prevent irreparable harm. The lower the showing of probable success on the merits, the higher plaintiff's burden is to show that the threatened harm to him outweigh the burdens imposed by granting an injunction.  Plaintiff has not shown probable success on the merits. The Court has found that he states claims for relief, and therefore, assumes there are questions going to the merits of this action.  But the Court cannot issue a preliminary injunction unless plaintiff has demonstrated that a threat of harm presently exists, even if injury is not absolutely certain to occur.  *FDIC v. Garner, 125 F.3d 1272, 1279-80 (9th Cir. 1997)*.  The Court does not find that Plaintiff faces an immediate threat of irreparable harm.  *See Caribbean Marine Servs. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1998)*.

Finally, the Court is disinclined to interfere with the day-to-day operations

of the prison facilities in Montana unless or until there has been a judgment

finding a violation of the United States Constitution is being perpetrated by the

department.  State prison officials are given deference in day-to-day prison

operations due to separation of powers and federalism concerns. *Turner v. Safley,*

*482 U.S. 78, 84-85 (1987).*

For these reasons, Plaintiff has not demonstrated he is entitled to the relief

he seeks.

## IV. CONCLUSION

### A.  Claims to be Recommended for Dismissal

For the reasons set forth above, Plaintiff's retaliation, due process, Fourth

Amendment, and grievance claims fail to state a claim upon which relief may be

granted.  These are not defects which could be cured by the allegation of

additional facts and accordingly they will be recommended for dismissal.

As Defendants Reich and ISP Officer John Doe were only named in the

retaliation and grievance claims, they will also be recommended for dismissal.

### B.  Claims to be Served

The Court has considered whether Plaintiff's First Amendment claims

regarding his visitation rights, his access to photos of his children, and the

interference with, opening of, and destruction of his legal mail are frivolous, malicious, fail to state a claim, or seek solely monetary relief from a defendant who is immune.  *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b).  It has also considered whether Plaintiff has a reasonable opportunity to prevail on the merits.  *See* 42 U.S.C. § 1997e(g).  The Court concludes dismissal of these claims against Defendants Deyott, Barkley, Phillips, Hatcher, McQuin, Hopkins, Guthrie, and McNiel is not appropriate at this time.  Defendants Deyott, Barkley, Phillips, Hatcher, McQuin, Hopkins, Guthrie, and McNiel must make an appearance on these claims.

Based on the foregoing, the Court issues the following:

## ORDER

1.  Pursuant to Fed.R.Civ.P. 4(d), the Court will request Defendants Deyott, Barkley, Phillips, Hatcher, McQuin, Hopkins, Guthrie, and McNiel to waive service of summons by executing, or having counsel execute, the Waiver of Service of Summons.[2]  The Waiver must be returned to the Court within **thirty (30) days of the entry date reflected on the Notice of Electronic Filing**.  If

---

[2]As Defendants Schweitzer, the Montana Department of Corrections, Ferriter, Ward, Montana State Prison, Mahoney, Reich, and John Doe are recommended for dismissal they do not need to file a responsive pleading at this time.

Defendants Deyott, Barkley, Phillips, Hatcher, McQuin, Hopkins, Guthrie, and McNiel choose to return the Waiver of Service of Summons, their answer or appropriate motion will be due within 60 days after the entry date of this Order as reflected on the Notice of Electronic Filing, pursuant to Fed.R.Civ.P. 12(a)(1)(B). *See* 42 U.S.C. § 1997e(g)(2) (while Defendants may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," Defendants are required to respond).

    2.  The Clerk of Court shall forward the documents listed below to:

Legal Counsel for the
Montana Department of Corrections
P.O. Box 201301
Helena, MT 59620-1301

    *    Plaintiff's Complaint (Document 2);

    *    Court's January 5, 2009 Order (Document 5);

    *    Court's June 18, 2009 Order (Document 8);

    *    Plaintiff's Amended Complaint (Document 9);

\*  this Order,

\*  a Notice of Lawsuit & Request to Waive Service of Summons; and

\*  a Waiver of Service of Summons

Should counsel determine they do not represent Defendants Deyott, Barkley, Phillips, Hatcher, McQuin, Hopkins, Guthrie, and McNiel in this matter, they should notify the Court's Pro Se Department as soon as possible.

Counsel for Defendants Deyott, Barkley, Phillips, Hatcher, McQuin, Hopkins, Guthrie, and McNiel must file a "Notice of Appearance" as a separate document at the time an Answer or Rule 12 motion is filed. *See* D. Mont. L.R. 12.2.

3.  Any party's request that the Court grant relief, make a ruling, or take an action of any kind must be made in the form of a motion, with an appropriate caption designating the name of the motion, served on all parties to the litigation, pursuant to Federal Rules of Civil Procedure 7, 10, and 11.  If a party wishes to give the Court information, such information must be presented in the form of a notice.  The Court will not consider requests made or information presented in letter form.

4.  Pursuant to Fed.R.Civ.P. 5(a), all documents presented for the Court's

consideration must be simultaneously served by first-class mail upon the opposing party or their counsel if the party is represented.  Each party shall sign and attach a proper certificate of service to each document filed with the Court.  The Certificate of Service must state the date on which the document was deposited in the mail and the name and address of the person to whom the document was sent.  The sender must sign the certificate of service.

    5.  Plaintiff <u>shall not</u> make any motion for default until at least seventy (70) days after the date of this Order.

    6.  At all times during the pendency of this action, Plaintiff SHALL IMMEDIATELY ADVISE the Court and opposing counsel of any change of address and its effective date.  Such notice shall be captioned "NOTICE OF CHANGE OF ADDRESS."  The notice shall contain only information pertaining to the change of address and its effective date, except if Plaintiff has been released from custody, the notice should so indicate.  The notice shall not include any motions for any other relief.  Failure to file a NOTICE OF CHANGE OF ADDRESS may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

    Further the Court issues the following:

## RECOMMENDATION

1.  All claims against Defendants Schweitzer, the Montana Department of Corrections, Ferriter, Ward, Montana State Prison, and Mahoney should be **DISMISSED WITHOUT PREJUDICE** as Plaintiff did not name these Defendants in his Amended Complaint.

2.  Plaintiff's retaliation, due process, Fourth Amendment, and grievance claims should be **DISMISSED WITH PREJUDICE** for fail to state a claim upon which relief may be granted.

3.  Defendants Reich and ISP Officer John Doe should be **DISMISSED WITH PREJUDICE**.

4.  Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Document 10) should be **DENIED**.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff may serve and file written objections to this Findings and Recommendation within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing.  Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendation."

A district judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendation.  Failure to timely file written objections may bar a de novo determination by the district judge and may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

This is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1), should not be filed until entry of the District Court's final judgment.

DATED this 12th day of November, 2009.

/s/Keith Strong
Keith Strong
United States Magistrate Judge

## NOTICE OF LAWSUIT AND REQUEST FOR
## WAIVER OF SERVICE OF SUMMONS

TO:   Legal Counsel for the
      Montana Department of Corrections
      P.O. Box 201301
      Helena, MT 59620-1301

 A lawsuit has been commenced by a pro se plaintiff against the following individuals:  Toni Barkley, Correctional Sgt. Charles Phillips, Correctional Officer Steve Hatcher, Correctional Sgt. Gary McQuin, Mail Room Supervisor Denise Deyott, Visiting Room Supervisor Lee Guthrie, Group Therapist Blair Hopkins, and Captain Scott McNiel.  A copy the Amended Complaint is attached to this notice.  It has been filed in the United States District Court for the District of Montana, Civil Action No. CV-08-081-H-DWM-RKS.  The Court has completed its pre-screening and concludes Defendants Deyott, Barkley, Phillips, Hatcher, McQuin, Hopkins, Guthrie, and McNiel must file a responsive pleading.  *See* 42 U.S.C. § 1997e(c), (g)(2); 28 U.S.C. §§ 1915(e)(2), 1915A(a), (b).

 This is not a formal summons or notification from the Court, but rather a request that you sign and return the enclosed waiver of service in order to save the cost of service by the U.S. Marshal's Service.  The cost of service will be avoided if you return the signed Waiver of Service of Summons within 30 days after the entry date reflected on the Notice of Electronic Filing of the "Order to Serve Complaint by Requesting Waiver of Service of Summons," which was served with this Notice.

 If you comply with this request and return the waiver to the Court, it will be filed with the Court and no summons will be served.  The action will then proceed as if you had been served on the date the waiver is filed, except you must file an answer or appropriate motion before 60 days from the date the Order directing this Notice of Lawsuit and Request for Waiver of Service of Summons to be sent was entered as indicated on the Notice of Electronic Filing.

 If you do not wish to waive service on behalf of Defendants, please indicate this on the Waiver of Service of Summons form.  The Court will, in turn, order the U.S. Marshal's Service to serve the complaint personally on Defendants and may impose the full costs of such service.

     /s/ Keith Strong
     Keith Strong
     United States Magistrate Judge

# WAIVER OF SERVICE OF SUMMONS

TO:   The U.S. District Court for the District of Montana

     The following Defendants acknowledge receipt of your request that they waive service of summons in the following action: Henry v. Barkley, et. al., Civil Action No. CV-08-081-H-DWM-RKS filed in the United States District Court for the District of Montana. Defendants have also received a copy of the Amended Complaint. I am authorized by the following Defendants to agree to save the cost of service of a summons and an additional copy of the complaint in this action by not requiring that the following individuals be served with judicial process in the case provided by Fed.R.Civ.P. 4:

_____; _____;

_____; _____;

_____; _____;

     The above-named defendants retain all defenses or objections to the lawsuits or to the jurisdiction or venue of the Court except for objections based on a defect in the summons or in the service of the summons. I understand judgments may be entered against the above-named defendants if an answer or motion under Fed.R.Civ.P. 12 is not served within 60 days after the date the Order directing the Notice of Lawsuit and Request for Waiver of Service of Summons to be sent was entered as indicated on the Notice of Electronic Filing.


     I decline to waive service on behalf of the following defendants:

_____; _____;

_____; _____;

_____; _____;


_____
DATE

_____
SIGNATURE

_____
PRINTED/TYPED NAME

_____

_____
ADDRESS