IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | |
|---|---|
| WILLIAM HENRY,<br><br>  Plaintiff,<br><br>vs.<br><br>DENISE DEYOTT, et al.,<br><br>  Defendants. | Cause No.  CV 08-081-H-DWM-RKS<br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE TO GRANT DEFENDANTS' MOTION TO DISMISS |

Pending is Defendants' Motion to Dismiss based upon Plaintiff's failure to exhaust his administrative remedies.  (Court Doc. 24).  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

Since Plaintiff failed to properly exhaust his administrative remedies, Defendants' motion should be granted.

I.  STANDARD

Defendants filed their Motion to Dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, requesting the Court dismiss this matter based upon Plaintiff's failure to exhaust his administrative

remedies. A motion to dismiss based on a prisoner's failure to exhaust administrative remedies is properly the subject of an unenumerated motion under Federal Rule of Civil Procedure 12(b). See Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). "In deciding a motion to dismiss for failure to exhaust non-judicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Wyatt, 315 F.3d at 1119-20. Where the court looks beyond the pleadings to a factual record in deciding the motion to dismiss, which is "a procedure closely analogous to summary judgment," the court must assure that the plaintiff has fair notice of his opportunity to develop a record. Wyatt, 315 F.3d at 1120 n. 14 (referencing the notice requirements outlined in Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) (en banc), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). Defendants served a Rand Notice upon Plaintiff with the filing of their Motion to Dismiss. (Court Doc. 27).

Defendants bear the burden of establishing that the plaintiff failed to exhaust administrative remedies prior to filing suit. See Wyatt, 315 F.3d at 1120. If the court concludes that administrative

remedies have not been exhausted, the unexhausted claims should be dismissed without prejudice.  Wyatt, 315 F.3d at 1120; see also Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

## II.  ALLEGATIONS

Plaintiff alleges Defendants terminated his visitation rights with his wife, children, and grandchildren and did not allow Plaintiff to have photos of his children in violation of his First Amendment rights and due process rights under the Fourteenth Amendment.

Additionally, Plaintiff alleges Defendant Deyott confiscated his legal mail from his attorney regarding the visitation issues and destroyed that legal mail without a hearing in violation of his due process rights and denying him access to the courts.  He also contends certain legal mail was opened outside of his presence.

## III.  ANALYSIS

Defendants move to dismiss Plaintiff's claims arguing Plaintiff failed to properly exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA").  The PLRA's exhaustion requirement states:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); see also Porter v. Nussle, 534 U.S. 516, 524-25, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).  This exhaustion requirement is mandatory.  Booth, 532 U.S. at 741.

The PLRA is applicable in this case and therefore Plaintiff must exhaust all available administrative remedies prior to filing this lawsuit.

The Montana State Prison follows the administrative grievance procedure set forth in Montana Department of Corrections Policy No. 3.3.3.  This policy provides the procedure for inmates to use to redress complaints and grievances.  (Court Doc. 26-1: Reich Affidavit ¶ 4; Court Doc. 26-3: MSP Policy 3.3.3).  The procedure provides inmates with four levels at which they may resolve a complaint.  Step one requires inmates to submit an informal resolution form within five working days of the event at issue.  (Court Doc. 26-1: Reich Affidavit, ¶

5; Court Doc. 26-3: Policy 3.3.3, Section III(E)). If the inmate is not satisfied with the response to the informal grievance and wishes to exhaust administrative remedies, the inmate must file a formal grievance, which is responded to by the prison grievance coordinator. (Court Doc. 26-1: Reich Affidavit, ¶ 5; Court Doc. 26-3: Policy 3.3.3, ¶ III(E)(4) & (F)). The grievance procedure then provides for appeals at two levels, first to the warden and then to the director of the Department of Corrections. (Court Doc. 26-1: Reich Affidavit, ¶ 5; Court Doc. 26-3: Policy 3.3.3, ¶ III(I)(a) and K)).

Plaintiff was told on August 21, 2008 that his wife and children could not visit even though they had been visiting him for the past three years. On August 25, 2008, he sent a "kite" (inmate request form) to D. Deyott asking for a copy of his judgment. That request was denied. On August 27, 2008, Plaintiff sent a second request to Deyott asking for the judgment and got the same response. On September 1, 2008, Plaintiff sent a third request to Deyott and got no response.

On September 24, 2008, Officer Dave Johnson, on orders from Officer McQuin, took Plaintiff's family pictures. Plaintiff was later told

the order came from Blair Hopkins and/or the Command Post. On September 28, 2008, Plaintiff sent a request form to Blair Hopkins and the Command Post asking to talk about the decision to take his family photos away. Hopkins responded stating, "I was asked to review your court judgment with security. It was determined that contact with minor children would be inappropriate." (Court Doc. 2-1, p. 6: Complaint, Exhibit E). Plaintiff received no response from the Command Post. On September 30, 2008, Plaintiff sent another request to Hopkins asking Hopkins who asked him to review the judgment. Hopkins responded on October 1, 2008, stating: "I am not sure who it was. But the judgment was clear that any contact with minors was prohibited." (Court Doc. 2-2, p. 1: Complaint, Exhibit F).

On October 7, 2008, Plaintiff submitted his first informal resolution form on these issues. He laid out the above history of his inmate requests and asked that his visiting be restored and his pictures returned. The requested action was denied on October 21, 2008 by Captain Scott McNeil with the following statement: "Inmate Henry per your judgment, the defendant will not associate with any individual

under the age of eighteen in a work or social situation, unless pre-approved by his therapist and supervising officer, and supervising officer, and is accompanied by a supervisor who has been preapproved by his supervising officer and his treating therapist.  Required to take sex offender treatment."  (Court Doc. 26-4, p. 2).

On October 22, 2008, Plaintiff submitted a formal grievance laying out the same history and requesting his visiting privileges restored and his pictures returned.  Billie Reich signed the response on October 31, 2008 stating, "Mr. Henry – Per policy you must first file an informal resolution regarding your issue.  Once you get that response you can move on to the formal grievance.  As written grievance will not be processed."  (Court Doc. 26-4, p. 1).

On November 3, 2008, Plaintiff filed an inmate request form stating he had filed an informal grievance.  Billie Reich responded on November 7, 2008 stating, "Mr. Henry – I stand corrected about the informal resolution you had the original white copies therefore our office could not have known you filed this – Further I still stand by the fact you are outside the time guidelines.  You found out you could not

visit on 8/21/07 but did not file until 10/7/08." (Court Doc. 2-3, p. 1: Complaint, Exhibit K).

Defendants argue Plaintiff's grievances were untimely and therefore insufficient to properly exhaust Plaintiff's claims. Exhaustion must be "proper," meaning a grievant must correctly use all steps the agency sets forth to allow the prison a chance to reach the merits of the issue in an effective manner. Woodford v. Ngo, 548 U.S. 81, 90-93 (2006). A prisoner must file timely and otherwise procedurally non-defective administrative grievances or appeals to constitute "proper" exhaustion. Ngo, 548 U.S. at 83.

Grievance Coordinator Billie Reich testified by affidavit that Plaintiff only submitted one formal grievance regarding the allegations in his complaint. That grievance was submitted October 22, 2008 and was ultimately denied as being untimely. Plaintiff was denied his visitation on August 21, 2008 and his photos were taken on September 24, 2008. Prison policy requires a prisoner to first present his issues of concern with an informal resolution form within five working days of the action or omission that caused the complaint. Thus, Plaintiff

should have filed an informal resolution form regarding his visitation on or before August 28, 2008 and an informal resolution regarding his photos on or before October 1, 2008. Plaintiff waited until October 7, 2008 to file an informal grievance regarding these issues.

Plaintiff presented evidence that he started filing offender request forms (OSRs) soon after he was denied his visitation. These forms, however, do not comply with the prison's policy which specifically requires the use of an informal resolution form. (Court Doc. 26-3: Policy 3.3.3, p. 2, ¶ III(E)(1)). The PLRA requires "[p]roper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules." Ngo, 548 U.S. at 90-91. Therefore, "filing an untimely or otherwise procedurally defective administrative grievance or appeal" does not satisfy the PLRA's exhaustion requirement. Ngo, 548 U.S. at 84.

Plaintiff's grievance was denied as untimely. As such, Plaintiff failed to properly exhaust his administrative remedies prior to filing this lawsuit. 42 U.S.C. § 1997e(a) requires dismissal when a plaintiff does not exhaust administrative remedies prior to filing a lawsuit.

McKinney v. Carey,  311 F.3d 1198, 1198 (9th Cir. 2002).

Accordingly, the Court issues the following:

RECOMMENDATIONS

1.  Defendants' Motion to Dismiss (Court Doc. 24) should be GRANTED and this matter DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies prior to filing suit.

2.  The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.  It is sufficiently clear that Plaintiff's failure to exhaust him administrative remedies demands dismissal and no reasonable person could suppose an appeal would have merit.

3.  The Clerk of Court should be directed to enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these Findings and Recommendations within fourteen (14) days of the date entered as indicated on the Notice of

Electronic Filing.  Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge and may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

This Order is not appealable and any notice of appeal pursuant to Fed.R.App.P. 4(a)(1), should not be filed until entry of the District Court's final judgment.

DATED this 15th day of April, 2010.

    /s/ Keith Strong
Keith Strong
United States Magistrate Judge